# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valle Del Sol, et al., | No. MC-14-00058-PHX-SRB |
| Petitioners, | **ORDER** |
| v. | |
| Kris W. Kobach, | |
| Respondent. | |

The Court now considers Plaintiffs' Motion to Compel Compliance with Subpoena Duces Tecum ("MTC") (Doc. 1).

## I. BACKGROUND

Plaintiffs have moved to compel non-party Kris Kobach to produce documents in response to several subpoena duces tecum issued by the Court in *Valle del Sol v. Whiting* (No. 10-CV-01061-PHX-SRB), litigation involving Plaintiffs' challenge to the constitutionality of S.B. 1070. (*See* MTC at 1; Doc. 2, Pls.' Mem. in Supp. of MTC ("Mem. in Supp.") at 1-23.) This case, along with the Motion, was transferred to this Court from the U.S. District Court for the District of Kansas, the district in which Mr. Kobach resides and where the subpoenas called for responsive documents to be produced. (Doc. 20, Aug. 4, 2014 Mem. & Order Granting Mot. to Transfer (No. 14-mc-219-JAR)); *see* Fed. R. Civ. P. 45(f).

Mr. Kobach is currently the Secretary of State for Kansas and has maintained a part-time law practice specializing in federal preemption since 2004. (Doc. 11-3, Decl. of Kris W. Kobach ("Kobach Decl.") ¶ 1; Doc. 14, Kris Kobach's Mem. in Resp. to MTC

("Mem. in Resp.") at 1.) He has publicly acknowledged that he played a significant role in drafting legislation that eventually became S.B. 1070, calling himself "a co-author" of S.B. 1070 with former Arizona State Senator Russell Pearce, the law's principal sponsor. (Mem. in Supp. at 3; Doc 2-4, Ex. AA, "About" Section of Kris Kobach's Campaign Website.) Through the subpoenas, Plaintiffs sought evidence concerning communications Mr. Kobach had with Senator Pearce and other legislators regarding S.B. 1070 and precursor legislation. (*See, e.g.*, Doc. 2-2, Ex. A, Subpoena Duces Tecum to Kris W. Kobach.) Mr. Kobach has produced seven emails he received from Senator Pearce but has withheld another twenty-one emails and email chains with Senator Pearce related to the drafting of S.B. 1070 on attorney-client privilege grounds. Classifying the contents of these emails as "legal advice," Mr. Kobach contends that these communications with Senator Pearce were protected by the attorney-client privilege because they included "suggested amendments that would enable the legislation to survive . . . [anticipated] legal challenges." (Mem. in Resp. at 1.) He also contends that the subpoenas seek irrelevant information. (*Id.* at 22-23.)[1]

## II.  LEGAL STANDARDS AND ANALYSIS

The Federal Rules of Civil Procedure authorize a party to seek the production of relevant, non-privileged documents from non-parties through a subpoena. *See* Fed. R. Civ. P. 45(a)(1)(C). A non-party "is subject to the same scope of discovery . . . as a party" under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 45(a) advisory committee notes to 1991 amendment. "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). The attorney-client privilege "protects confidential disclosures made by a client to an attorney . . . to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (second alteration in original). The

---

[1] Mr. Kobach initially raised an undue burden objection but has not raised that objection in opposing the Motion to Compel. (*See* Mem. in Supp. at 5 n.4.)

Ninth Circuit applies an eight-part test to determine whether information is protected by the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (internal quotation marks omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

Plaintiffs argue that Mr. Kobach's position is foreclosed by the law of the case doctrine, contending that the Court has already addressed whether the attorney-client privilege protects the types of communications requested in the subpoenas. (Mem. in Supp. at 7-11); *see United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993))). The Court has previously addressed whether the attorney-client privilege protected communications involving S.B. 1070 made between two non-profit organizations Mr. Kobach is affiliated with—the Federation for American Immigration Reform ("FAIR") and its legal arm, the Immigration Reform Law Institute ("IRLI")—and Arizona legislators and their staff. (*See Valle del Sol v. Whiting* (No. 10-CV-01061-PHX-SRB), Doc. 927, Dec. 11, 2013 Order at 9; Doc. 961, Jan. 31, 2014 Order at 1-4.)

In support of their opposition to FAIR and IRLI's Motion to Quash, Plaintiffs submitted emails between FAIR/IRLI attorneys and Senator Pearce as representative examples of the types of communications at issue, including several exchanged between Mr. Kobach and Senator Pearce. (*See* Docs. 911-1, 911-2 (summarizing filed exhibits).) The Court rejected FAIR and IRLI's argument that the communications were protected

1  by the attorney-client privilege, reasoning that "there [wa]s no evidence that [FAIR and
2  IRLI] had formed an attorney-client relationship with the state legislators with whom
3  they were in communication" because they had offered Arizona legislators what the
4  Court referred to as policy advice, not legal advice. (Dec. 11, 2013 Order at 9.) After
5  ordering additional briefing on the attorney-client privilege issue, the Court denied FAIR
6  and IRLI's Motion for Reconsideration. (Jan. 31, 2014 Order at 3-4.) Finding that "FAIR
7  and IRLI d[id] not and [could not] challenge the characterization of their activities as
8  lobbying Arizona legislators during the process of formulating and enacting S.B. 1070,"
9  the Court explained that "[s]everal courts ha[d] found that advice of the type given in
10 lobbying efforts is not privileged." (*Id.* at 3 (collecting cases).)

11 Even if the law of the case doctrine does not apply because Mr. Kobach was not
12 involved in that specific discovery dispute, the reasoning in those orders applies here.
13 First, Mr. Kobach has not shown that he had an attorney-client relationship with Senator
14 Pearce at the time the communications were made. *See Alexander v. Superior Court*, 685
15 P.2d 1309, 1314 (Ariz. 1984) ("An attorney-client relationship is said to exist when the
16 party divulging confidences and secrets to an attorney believes that he is approaching the
17 attorney in a professional capacity with the intent to secure legal advice." (internal
18 quotation marks omitted)). The only evidence offered to show an attorney-client
19 relationship is from declarations of Mr. Kobach and Senator Pearce, who maintain that
20 they formed an attorney-client relationship for pro bono services starting in February
21 2006 that continues to this day. (Doc. 11-2, Aff. of Russell K. Pearce ("Pearce Aff.") ¶ 2;
22 Kobach Decl. ¶ 7.) Mr. Kobach has not provided any evidence that corroborates those
23 statements and, in fact, the record contradicts them. Mr. Kobach has called himself the
24 "co-author" of S.B. 1070, a classification that would make little sense if an attorney-
25 client relationship existed during the process of formulating and enacting S.B. 1070.

26 Assuming there was an attorney-client relationship, Mr. Kobach has failed to show
27 that the communications were legal advice. *See Richey*, 632 F.3d at 566 ("The attorney-
28 client privilege protects confidential communications between attorneys and clients,

- 4 -

1  which are made for the purpose of giving legal advice."). The sworn statements
2  submitted by Mr. Kobach merely recite legal conclusions. (Pearce Aff. ¶ 3 ("I sought
3  legal advice from Mr. Kobach . . . in anticipation of that litigation, so that my proposed
4  bills would survive any legal challenge."); Kobach Decl. ¶ 7 ("I formed an attorney-client
5  relationship with Russell Pearce for the purpose of providing legal analysis of legislation
6  that he was considering proposing in the Arizona Legislature. I provided legal advice in
7  anticipation of litigation over those bills, should they become law.").) The record
8  contains several emails that have been disclosed to Plaintiffs from a public records
9  request, which are included in Mr. Kobach's privilege log. (*See* Doc. 2-6, Exs. GG-QQ.)
10 These emails generally show that Mr. Kobach provided often unsolicited language to
11 Senator Pearce that was largely adopted verbatim into what became S.B. 1070. There is
12 nothing in these emails that sufficiently distinguishes this discovery dispute from the one
13 involving FAIR and IRLI. The emails can only be interpreted one way—as policy advice
14 by Mr. Kobach to advance shared policy and political objectives. *See In re Cnty. of Erie*,
15 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than
16 as a lawyer, as (for example) a *policy advisor*, media expert, business consultant, banker,
17 referee or friend, that consultation is not privileged." (emphasis added)); *In re Lindsey*,
18 148 F.3d 1100, 1106 (D.C. Cir. 1998) ("[A]dvice on political, strategic, or policy issues .
19 . . would not be shielded from disclosure by the attorney-client privilege.").

20 Mr. Kobach also argues that the subpoenas seek irrelevant information. (Mem. in
21 Resp. at 22-23.) The Court rejected a similar argument advanced by FAIR and IRLI,
22 stating:

> Plaintiffs' subpoenas seek communications between Arizona legislators and the people advising them through the process of drafting the legislation that eventually became S.B. 1070. The Court finds that those communications are likely to contain admissible evidence or lead to the discovery of admissible evidence of those legislators' intent in drafting and supporting S.B. 1070 as "contemporary statements by members of the decisionmaking body."

(Dec. 11, 2013 Order at 6 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429
U.S. 252, 268 (1977)).) This reasoning applies with equal force to the discovery dispute

here, and the Court will not depart from it.

## III. CONCLUSION

The Court grants Plaintiffs' Motion to Compel because Mr. Kobach has not shown that the subpoenas seek privileged or irrelevant information.

**IT IS ORDERED** granting Plaintiffs' Motion to Compel Compliance with Subpoena Duces Tecum (Doc. 1).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to close this case.

Dated this 27th day of August, 2014.

_____
Susan R. Bolton
United States District Judge